UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 10443 RCL

| | |
|---|---|
| THE SOCIETY OF LLOYD'S,<br><br>Plaintiff,<br><br>v.<br><br>BARBARA A. CROSBY, EXECUTRIX<br>OF THE ESTATE OF JOHN PLAYER CROSBY<br><br>Defendants. | MAGISTRATE JUDGE Bowler<br><br>CIVIL ACTION RECEIPT # 54288<br>AMOUNT $ 150<br>SUMMONS ISSUED yes<br>LOCAL RULE 4.1<br>WAIVER FORM<br>MCF ISSUED<br>BY DPTY. CLK.<br>DATE 3/4/04 |

## COMPLAINT

This is a civil action for money damages. Plaintiff The Society of Lloyd's ("Lloyd's"), by and through its attorneys, alleges as follows:

### Nature Of Complaint

1. On March 11, 1998, the High Court of Justice, Queen's Bench Division in London, England (the "English Court"), entered a money judgment (the "Judgment") in favor of Lloyd's against Defendant's decedent, John Player Crosby ("Crosby"), for premiums due and owing in respect of a contract of reinsurance between Crosby and Equitas Reinsurance Ltd. ("Equitas"), an English reinsurance company duly authorized by the government of the United Kingdom.

2. Equitas, prior to judgment, had assigned Lloyd's all rights to recover these premiums. Lloyd's seeks an order pursuant to Massachusetts' Uniform Foreign Money-Judgment Recognition Act, Massachusetts General Laws c. 235 § 23A (the "Recognition Act"), recognizing and enforcing the Judgment, and entering judgment in the U.S. dollar equivalent amount of the Judgment, with post-judgment interest, costs, and fees. Additionally and in the

alternative, Lloyd's seeks an order recognizing and enforcing the Judgment pursuant to general principles of international comity.

## Parties, Jurisdiction, And Venue

3. Lloyd's was incorporated by an Act of the Parliament of the United Kingdom and has its principal place of business in London, England. Lloyd's is not an insurance company and does not accept or insure risks. Pursuant to a succession of Acts of Parliament, *Lloyd's Acts 1871-1982,* Lloyd's governing body, the Council of Lloyd's, regulates an international insurance market, located in England, comprising individual and (since 1994) corporate members from all over the world. These members, known as "Names," underwrite insurance policies in groups known as syndicates, but do not share profits or losses. Rather, they underwrite as "sole traders," accepting risks "each for his own part, and not for each other."

4. Defendant is a natural person and resident of the Commonwealth of Massachusetts. Defendant is sued in her capacity as executrix of the estate of Crosby, who died on June 9, 2003. Crosby was a Name in the Lloyd's market.

5. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Because there is diversity of citizenship between the parties, this Court has jurisdiction under 28 U.S.C. § 1332(a)(2).

6. Venue is proper in this district under 28 U.S.C. § 1391(a)(1).

## Factual Background

### I. Crosby's Membership In An English Insurance Market

7. Natural persons may not underwrite insurance in England unless they become members of Lloyd's. As a Name, Crosby was authorized by an Act of Parliament, *Insurance Companies Act 1982* § 2, to underwrite insurance policies, subject to the provisions of *Lloyd's Acts 1871-1982* and the regulations promulgated by the Council of Lloyd's. Crosby conducted his underwriting business at Lloyd's through a duly appointed agent, resident in England, who

owed him contractual and fiduciary duties of care and loyalty under English law ("Underwriting Agent").

8. As a condition of membership of Lloyd's, Crosby entered into certain agreements governing his or her membership of, and underwriting in, the Lloyd's market. In the General Undertaking, one of the agreements that Crosby executed, he agreed as follows:

> 1. Throughout the period of his membership of Lloyd's the Member shall comply with the provisions of Lloyd's Acts 1871-1982, any subordinate legislation made or to be made thereunder and any direction given or provision or requirement made or imposed by the Council or any person(s) or body acting on its behalf pursuant to such legislative authority and shall become a party to, and perform and observe all the terms and provisions of, any agreements or other instruments as may be prescribed and notified to the Member or his underwriting agent by or under the authority of the Council.

9. Crosby also agreed in the General Undertaking that all disputes relating to or arising out of his membership of Lloyd's or underwriting at Lloyd's would be governed by English law and litigated in the courts of England (the "English Courts"):

> 2.1 The rights and obligations of the parties arising out of or relating to the Member's membership of, and/or underwriting of insurance business at, Lloyd's and any other matter referred to in this Undertaking shall be governed by and construed in accordance with the laws of England.
>
> 2.2 Each party hereto irrevocably agrees that the courts of England shall have exclusive jurisdiction to settle any dispute and/or controversy of whatsoever nature arising out of or relating to the Member's membership of, and/or underwriting of insurance business at, Lloyd's and that accordingly any suit, action or proceeding (together in this Clause 2 referred to as "Proceedings") arising out of or relating to such matters shall be brought in such courts and, to this end, each party hereto irrevocably agrees to submit to the jurisdiction of the courts of England and irrevocably waives any objection which it may have now or hereafter to (a) any Proceedings being brought in any such court as is

> referred to in this Clause 2 and (b) any claim that any such Proceedings have been brought in an inconvenient forum and further irrevocably agrees that a judgment in any Proceedings brought in the English Courts shall be conclusive and binding upon each party and may be enforced in the courts of any other jurisdiction.
>
> 2.3   The choice of law and jurisdiction referred to in this Clause 2 shall continue in full force and effect in respect of any dispute and/or controversy of whatsoever nature arising out of or relating to any of the matters referred to in this Undertaking notwithstanding that the Member ceases, for any reason, to be a Member of, or to underwrite insurance business at, Lloyd's.

*Id.* Because Crosby did not fully satisfy all of his underwriting obligations, under English law his estate remains subject to Lloyd's regulatory authority.

10.   The provisions of the General Undertaking requiring that all litigation between Lloyd's and the Names be conducted in the courts of England and governed by English law (the "Choice Clause") have been held to be valid and enforceable by eight federal appellate courts that have considered the issue. *See Lipcon v. Underwriters at Lloyd's*, 148 F.3d 1285 (11th Cir. 1998); *Richards v. Lloyd's of London*, 135 F.3d 1289 (9th Cir. 1998) (en banc); *Haynsworth v. The Corporation*, 121 F.3d 956 (5th Cir. 1997), *cert. denied*, 523 U.S. 1072 (1998); *Allen v. Lloyd's of London*, 94 F.3d 923 (4th Cir. 1996); *Bonny v. Society of Lloyd's*, 3 F.3d 156 (7th Cir. 1993), *cert. denied*, 510 U.S. 1113 (1994); *Roby v. Corporation of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993), *cert. denied*, 510 U.S. 945 (1993); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953 (10th Cir. 1992), *cert. denied*, 506 U.S. 1021 (1992); *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227 (6th Cir. 1995). Such forum selection clauses are valid and enforceable in Massachusetts. *See Silva v. Encyclopedia Brittania Inc.*, 239 F.3d 385, 386-87 (1st Cir. 2001); *Jacobson v. Mailboxes Etc. U.S.A., Inc.*, 419 Mass. 572, 57 (1995); *see also M/S Bremen v. Zopata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (forum clauses "are prima facie valid" in the United States).

## II. Crosby's Failure To Satisfy His Underwriting Obligations

11.     Although underwriting in the Lloyd's market was historically a profitable venture, in the late 1980s and early 1990s, Names in the Lloyd's market incurred aggregate underwriting losses of £8 billion (over $12 billion). Many Names defaulted on their underwriting obligations as they came due, putting policy-holders at risk of non-payment. In addition, many Names faced outstanding contingent liabilities for which they were unable to purchase reinsurance, leaving them unable to resign from Lloyd's, and subject to open-ended losses. At the same time, a significant amount of litigation began to embroil the Lloyd's market.

12.     In order to resolve these issues — which threatened the continued viability of the Lloyd's market — Lloyd's implemented the reconstruction and renewal ("R&R") plan. The R&R plan had two separate components:

> (1) the mandatory reinsurance of all Names' outstanding underwriting liabilities from 1992 and prior years of account by Equitas pursuant to the Equitas Reinsurance Contract. Following the most extensive insurance reserving project in history (subject to close oversight by the U.K. government), the cost of reinsuring each Name's outstanding 1992 and prior liabilities (over and above Names' existing reserves) was individually calculated and charged to the Name (the "Equitas Premium"). Names who wished to resign their membership of Lloyd's would be able to do so upon payment of their Equitas Premium and other outstanding obligations; and
>
> (2) an offer of settlement to each Name with liabilities on 1992 and prior underwriting years of account (the "Settlement Offer") to end litigation and to assist each Name to meet their outstanding underwriting liabilities, including both accrued losses that had not yet been unpaid and the Equitas Premium.

PRV_637359_1/MPOGUE

A Name who did not accept the Settlement Offer was required to pay the full amount of his outstanding underwriting obligations, including the Equitas Premium, without discount.

13. The deadline for accepting the Settlement Offer was August 28, 1996, and was subsequently extended to September 11, 1996. Approximately 95% of all Names accepted the terms of their Settlement Offers. The reinsurance of all Names' outstanding 1992 and prior liabilities by Equitas became effective on September 4, 1996. The full amount of the Equitas Premium became due and payable for Names who rejected the Settlement Offer by the end of September, 1996. Crosby did not accept his Settlement Offer or pay the full amount of his Equitas Premium due and owing to reinsure his outstanding underwriting liabilities, although he benefited from the reinsurance cover provided by Equitas since the effective date of the Equitas reinsurance transaction.

14. On or before October 2, 1996, for reasons of regulatory prudence and to ensure immediate funding for Equitas that was necessary for Equitas to meet regulatory requirements imposed by the U.K. government, Equitas irrevocably assigned to Lloyd's the right to collect unpaid Equitas Premiums, including the right for Lloyd's to sue in its own behalf to recover unpaid Equitas Premiums.

### III. The English Action Against Crosby

15. On various dates beginning in late 1996, Lloyd's commenced separate actions against Crosby and other Names who had not paid their Equitas premium in full for payment of the Equitas Premium plus unpaid interest and costs (the "English Actions"). The English Actions were commenced by filing a Writ of Summons (analogous to a complaint in American practice) in the English Court.

16. Lloyd's properly served Crosby, who in turn retained an English solicitor to represent him in the English Actions. In the English Actions, Crosby filed an Acknowledgment of Service of Writ of Summons, which is equivalent to making an appearance.

17. In the English Actions, during an extensive series of hearings Crosby had a full and fair opportunity to raise various defenses to his obligation to pay the Equitas Premium. In a series of decisions, defenses raised by the Names (including Crosby) to payment of the Equitas premium were considered and rejected by the English Court, including:

(1) that Lloyd's lacked the authority under *Lloyd's Acts 1871-1982* to mandate that all Names purchase reinsurance cover from Equitas;

(2) that Names were entitled to rescind their membership of Lloyd's as a result of alleged fraud in the inducement of their membership or underwriting at Lloyd's;

(3) that Names were entitled to litigate claims of fraud in the inducement of their membership or underwriting at Lloyd's as a set-off to their obligation to pay the Equitas premium.

(4) that Names were not bound by certain provisions of the Equitas reinsurance contract;

(5) that Lloyd's lacked title to sue for the Equitas premium; and

(6) that securities laws in the United States and elsewhere provided a defense to payment of the Equitas premium.

18. While holding that Lloyd's right to recover the Equitas Premium could not be delayed until any fraud claims were resolved, the English Court did not preclude Crosby, or any other Names, from asserting claims of fraud against Lloyd's. To the contrary, the English Courts acknowledged the right of Names to sue Lloyd's for fraud, and several hundred Names subsequently asserted such claims, albeit without success.

19. Following an extensive evidentiary hearing to consider the Names' defenses to payment of the Equitas premiums (including defenses based on allegations of fraud), the English Court entered judgments in favor of Lloyd's against over 550 individual Names in respect of their respective Equitas Premiums.

PRV_637359_1/MPOGUE

20. In particular, on March 11, 1998, the English Court entered judgment in favor of Lloyd's and against Crosby in the amount of £365,374.25, or $678,536.51. A copy of the judgment entered against Crosby (the "Judgment") is attached hereto as Exhibit 1. For jurisdictional purposes, the equivalent dollar amount for the Judgment has been calculated using the exchange rate of UK £1= USD $1.8571 in effect as of February 27, 2004. Pursuant to the Payment Day Rule, adopted by the Supreme Judicial Court of Massachusetts, Lloyd's seeks to recover from Crosby either (a) the amount of the Judgment in United Kingdom pounds sterling or (b) the equivalent in U.S. dollars of the Judgment in effect on the day of or the day before payment, with interest. *See Manches v. Gilbey*, 419 Mass. 414, 418-20 (1995).

21. All appeals from the entry of the Judgment have now been exhausted.

22. The fraud claims brought by some of the Names were tried on the merits in a trial lasting several months. The Names' fraud claims were ultimately rejected, with judgment entered in favor of Lloyd's in 2000. *The Society of Lloyd's v. Jaffray*, Queen's Bench Division (Commercial Court), 3 November 2000 (affirmed by the Court of Appeal on 20 July 2002).

**IV.   The Judgment Remains Unsatisfied**

23. The Judgment is final, conclusive and fully enforceable in England. No appeal from entry of the Judgment is pending. Pursuant to English law, interest in the amount of 8% is currently accruing on the Judgment.

24. There is no other judgment between Crosby and Lloyd's that conflict with the Judgment.

25. Lloyd's has not entered into any agreement with Crosby pursuant to which the dispute over payment of the Equitas Premium should have been settled other than through the English Actions.

## COUNT I

### Recognition And Enforcement Pursuant To The Uniform Foreign-Money Judgment Act

26.  Lloyd's hereby incorporates by reference the allegations set forth in paragraphs 1 through 25 above as if fully set forth herein.

27.  The Judgment, which was duly entered in England, a foreign state, is enforceable in Massachusetts pursuant to the Recognition Act, G.L. c. 235 § 23A.

28.  The Judgment is a "foreign judgment" that is final and conclusive and enforceable under the laws of England, the jurisdiction where it was rendered. *See* Recognition Act, § 23A.

29.  The Judgment was rendered under a system that provides impartial tribunals and procedures compatible with the requirements of due process of law.

30.  The English Courts had personal jurisdiction over Crosby, for reasons including but not limited to: his voluntary appearance in the English Actions; his agreement in the General Undertaking to submit to the jurisdiction of the English Courts with respect to the subject matter involved; and by the appointment of an Underwriting Agent, Crosby had a business office in England and the proceedings in the English Court involved a cause of action arising out of underwriting business done by Crosby through that office in England.

31.  The English Courts also had subject matter jurisdiction over the actions resulting in the Judgment. None of the discretionary grounds for denying recognition to a foreign judgment enumerated in the Recognition Act is applicable to the recognition of the Judgment. In the alternative, the Court should exercise its discretion notwithstanding the existence of any such grounds.

32.  In light of the foregoing, the Judgment is conclusive between Lloyd's and Crosby pursuant to the Recognition Act and is enforceable in the same manner as the judgments of a sister state.

33.  Other United States courts have already recognized and enforced judgments against similarly situated Names under the Uniform Foreign Money-Judgment Recognition Act.

*See, e.g., Society of Lloyd's v. Turner*, 303 F.3d 325 (5th Cir. 2002); *Society of Lloyd's v. Ashenden*, 233 F.3d 473 (7th Cir. 2000); *Society of Lloyd's v. McKellar*, No. CV-S-03-1249-KJD-LRL (D. Nev. Oct. 3, 2003); *Society of Lloyd's v. Shields*, No. 3:03-0032 (D. Tenn. Oct. 1, 2003); *Society of Lloyd's v. Evnen*, No. 8:02cv118 (D. Neb. April 28, 2003); *Society of Lloyd's v. Davies*, No. 1:02-cv-1602-GET (N.D. Ga. April 23, 2003); *Society of Lloyd's v. Mullin*, 2003 WL 1593862 (E.D. Pa. 2003); *Society of Lloyd's v. Borger*, No. CV-02-0423-PHX-FJM (D. Ariz. 2003); *Society of Lloyd's v. Blackwell*, No. 02CV488-T (S.D. Cal. 2003); *Society of Lloyd's v. Bennett*, No. 2:02-CV-204TC (D. Utah 2002); *Society of Lloyd's v. Reinhart*, No. 02-264 (D.N.M. 2002); *Society of Lloyd's v. Rosenberg*, No. 02-1195 (E.D. Pa. 2002); *Society of Lloyd's v. Grace*, 718 N.Y.S.2d 327 (1st Dep't 2000); *Society of Lloyd's v. Webb*, 156 F. Supp. 2d 362 (N.D. Tex. 2001), aff'd, 303 F.2d 325 (5th Cir. 2002).

## COUNT II

### Recognition And Enforcement Pursuant To Principles Of Comity

34. Lloyd's hereby incorporates by reference the allegations set forth in paragraphs 1 through 33 above as if fully set forth herein.

35. Section 23A of Chapter 235 of the General Laws authorizes the courts of Massachusetts to recognize foreign judgments in situations not covered by the Recognition Act.

36. Although the Judgment is entitled to full recognition and enforcement pursuant to the express terms of the Recognition Act, it is also entitled to full recognition and enforcement pursuant to traditional principles of international comity as understood and applied by the courts of the United States of America and the Commonwealth of Massachusetts.

### Prayer For Relief

WHEREFORE, Lloyd's prays for judgment as follows:

A. The entry of an order enforcing judgment against Barbara A. Crosby, in her capacity as Executrix of the estate of John Player Crosby, for UK£365,374.25 (or its equivalent

in United States dollars on day of or day before payment) with interest thereon from March 11, 1998.

    B.    The entry of an order awarding Lloyd's its attorneys' fees, costs and disbursements for both the English Action and this action and granting Lloyd's such other and further relief as the Court may deem proper.

THE SOCIETY OF LLOYD'S

By its attorneys,

_____
Mark A. Pogue (BBO # 550807)
EDWARDS & ANGELL LLP
2800 Financial Plaza
Providence, RI  02903
401-274-9200
Telecopy 401-276-6611

Brian H. Lamkin (BBO# 635688)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, MA 02110
617-439-4444
Telecopy 617-439-4170

EXHIBIT 1

<u>1996 FOLIO NO 2862</u>

<u>IN THE HIGH COURT OF JUSTICE</u>

<u>QUEEN'S BENCH DIVISION</u>

<u>COMMERCIAL COURT</u>

MR JUSTICE TUCKEY

B E T W E E N :



THE SOCIETY OF LLOYD'S     Plaintiff

- and -

JOHN PLAYER CROSBY     Defendant

## JUDGMENT

The 11th day of March 1998

The Defendant having given notice of intention to defend herein and the Court having under Order 14, rule 3 ordered that the Judgment as hereinafter provided be entered for the Plaintiff against the Defendant

IT IS THIS DAY ADJUDGED that the Defendant do pay the Plaintiff the sum of £365,374.25 being £325,340.17 principal and £40,034.08 interest together with costs to be taxed if not agreed.

                                    Dibb Lupton Alsop
                                    7th Floor
                                    2 Minster Court
                                    Mincing Lane
                                    London EC3R 7XW
                                    Solicitors for the Plaintiff

<u>1996 FOLIO NO 2862</u>

<u>IN THE HIGH COURT OF JUSTICE</u>

<u>QUEEN'S BENCH DIVISION</u>

<u>COMMERCIAL COURT</u>

B E T W E E N :

THE SOCIETY OF LLOYD'S

Plaintiff

- and -

JOHN PLAYER CROSBY

Defendant

# JUDGMENT

Dibb Lupton Alsop
7th Floor
2 Minster Court
Mincing Lane
LONDON
EC3R 7XW

Tel: 0171 796 6501
Fax: 0171 796 6784

F/E Ref : SGD/CJJ